# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

FILED
JUN 29 2011
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
　　　　DEPUTY CLERK

—oOo—

UNITED STATES OF AMERICA
v.
Daniel Richard GARCIA

1653 Quincey Lane, Fairfield, California

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER:

2 11 - MJ - 184 .   EFB

---

I, the undersigned complainant state that the following is true and correct to the best of my knowledge and belief.  On or about **May 27, 2011,** in **Solano** County, in the Eastern District of California defendant did, (Track Statutory Language of Offense)

▸ Possess a Deadly or Dangerous Device in Furtherance of a Crime of Violence, Use Explosives to Damage Property in Interstate Commerce, and Possess an Unregistered Destructive Device,

in violation of Title 18, United States Code, Sections 924(c) and 844(I) and Title 26, United States Code, Section 5867(d).  I further state that I am a Bureau of Alcohol, Tobacco and Firearms Task Force Officer and that this complaint is based on the following facts:

▸ **See Attached Affidavit of William I. Shaffer**

Continued on the attached sheet and made a part of this complaint: **X** _____

Signature of Complainant  William I. Shaffer,
ATF Task Force Officer

Sworn to before me, and signed in my presence
June 28, 2011                                                             at   Sacramento, California

Date                                                                                     City / State

Edmund F. Brennan         U.S. Magistrate Judge                      _____

Name of Judge         Title of Judge         Signature of Judge

## AFFIDAVIT OF WILLIAM I. SHAFFER

I, WILLIAM I. SHAFFER, Police Officer of the Fairfield, California Police Department and deputized Task Force Officer for the Bureau of Alcohol, Tobacco, Firearms, and Explosives, being duly sworn, do declare and state:

### INTRODUCTION

1. I respectfully submit this affidavit pursuant to Rule 41 of the Federal Code of Criminal Procedure in support of a search warrant to search the cellular telephone (hereinafter "SUBJECT TELEPHONE") as further described in Attachment A-1 of this affidavit, seized from Daniel Richard Garcia on his June 18th, 2011 arrest, a purple thumb drive labeled "Rich Dad's Education" as further described in Attachment A-2 of this affidavit, and a black Cannon SD card as further described in Attachment A-3 of this affidavit, for items particularly described in Attachment B. The cellular phone is in law enforcement possession and is currently stored at the Fairfield Police Department Property/Evidence Section, 1000 Webster Street, Fairfield, California.

2. In addition, this affidavit seeks to establish probable cause for the issuance of a criminal complaint and arrest warrant for Daniel Richard GARCIA for violations of Title 18, United States Code, Section 924(c)(1)(A) — Possession of a Deadly or Dangerous Device in Furtherance of a Crime of Violence, Title 18, United States Code, Section 844(i) — Use of Explosives to Damage Property in Interstate Commerce, and Title 26, United States Code, Section 5861(d) — Possession of an Unregistered Destructive Device.

3. For the reasons stated below, I submit that there is probable cause to believe that the SUBJECT CELL PHONE and Thumb Drive and SD card ("ELECTORNIC STORAGE MEDIA") presently contains or constitutes evidence of the offenses listed in Paragraph 2 above. Because this affidavit is submitted for the limited purpose of obtaining a search warrant for the SUBJECT CELL PHONE and a complaint and arrest warrant for Daniel Richard GARCIA, I have not included each and every fact known to me relating to the underlying investigation. Rather, I have set forth only the facts that I believe are necessary to support the probable cause for the search warrant sought herein.

### STATUTORY AUTHORITY

4. Under Title 18, United States Code, Section 924(c)(1)(A), it is a federal crime during and in relation to any crime of violence, to use or carry a firearm or in furtherance of a crime of violence possess a firearm, including a deadly or dangerous weapon or device.

5. Under Title 18, United States Code, Section 844(i), it is a federal crime to maliciously damage or destroy, or attempt to damage or destroy, by means of fire or an explosive, any building, vehicle, or other real or personal property used in interstate or foreign commerce or in any activity affecting interstate or foreign commerce.

6. Under Title 26, United States Code, Section 5861(d), it is a federal crime to receive or possess a firearm, including a destructive device, which is not registered in the National Firearms Registration and Transfer Record.

## AFFIANT'S BRACKGROUND AND EXPERIENCE

7. I am a Police Officer of the Fairfield, California Police Department and have been so employed since January 1999. I am presently assigned to the Major Crimes Unit as a Detective with a focus on violence and weapons related crimes. I am a peace officer within the definitions of California Penal Code Section 830. Additionally, I am a deputized Task Force Officer for the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF). I received my Police Officer Training from the Napa Valley Criminal Justice Training Center in Napa, California.

8. As a Police Officer, I have investigated numerous types of crime including, but not limited to, robbery, homicide, burglary, narcotics, domestic violence, sexual assault, fraud, vehicle theft, and weapons possession, and have assisted in numerous other investigations. I have made numerous arrests of persons who have committed these crimes. I have also had the opportunity to consult with other experienced investigators about these investigations. I have learned that persons who commit these crimes often possess both the implements and fruits of these crimes, including weapons and clothing worn during the crimes (as well as property stolen/obtained and news media articles/videos about the crime) within their residence or vehicles. Further, I have participated in or caused to occur, the service of numerous state arrest warrants and state search warrants.

9. In March 2010, I attended a forty hour Post-Blast Investigation Course by Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). The course covered the composition of Improvised Explosives Devices (IEDs) along with both military and commercial explosives; including the types of fusing, timing, detonating, or igniting mechanisms used. The class specifically covered the investigation of blast scenes and collection of evidence at blast scenes. The class covered trends in the use of IEDs by both foreign and domestic terrorists. The course included live demonstrations of various military/commercial explosives, along with IEDs. The course concluded with a scenario investigation of an IED blast scene in which the objectives were to identify the composition of the device, placement of the device prior to functioning, and the triggering mechanism of the device.

10. Additionally, I have learned through the course of several of my own investigations, and the investigations of other Officers, Detectives, and Special Agents that persons involved in criminal activity rely heavily on the use of cellular phones. The persons involved in the above mentioned offenses often use their cellular phones to coordinate and communicate about their criminal activity. The persons use voice calls, text messages, and multimedia messages to carry out the coordination and communication related to the offense(s) that they are involved in. They also take photographs of themselves and others that show dominion and control over the cellular phone and sometimes show criminal activity. Those cellular phones also send signals that can be used to identify the general area where the phone is located at a given time. This information can be useful in an investigation regarding a destructive device or other crime because it can show where the person possessing the phone was at or near the time of the incident.

11. By virtue of my training and experience, and through consultations with other Officers and Special Agents who conduct weapons and explosives related investigations, I have become familiar with the methods used by individuals who possess and use explosives, both conventional and improvised.

12. In preparing this affidavit, I have reviewed the written reports relating to this investigation, have conducted interviews of victims and witnesses in this investigation, and have spoke with other Officers and Special Agents about their knowledge of the relevant facts. Where statements are made by other individuals (including state and federal law enforcement officers), and other documents or records are references in this affidavit, the information and statements are described in sum and substance.

## STATEMENT OF PROBABLE CAUSE

### Initial Investigation

13. On May 27, 2011, at 0800 hours, I became aware of a bombing that had occurred at about 0100 hours that morning in the City of Fairfield. I began conducting an investigation into the incident which included obtaining and reviewing the original incident report as documented under Fairfield Police case 11-5360.

14. Upon reviewing the report, I learned that at approximately 0100 hours, J. REED and K. CLARK were present in their apartment at 1427 Phoenix Drive in the City of Fairfield. Their vehicle, a dark blue 1996 Chevrolet Tahoe SUV CA/4EYS274, was parked in the rear (south) parking lot of 1427 Phoenix Drive. The placement of the vehicle put the vehicle within a dozen feet of the bedrooms of the apartments along the south side of the complex.

15. At approximately 0100 hours, REED and CLARK heard a loud bang outside their apartment. CLARK indicated that he heard two "tings" that he described as metal hitting concrete just prior to the bang. Upon hearing the bang, CLARK looked outside and discovered there was a fire under their vehicle. CLARK took a fire extinguisher outside and put out the fire under his vehicle.

16. Fairfield Police and Fire Departments responded to the incident. Officers Shackford and Grimm were involved in the investigation. Grimm collected several items of evidence including remains of blue metal cylinders, a galvanized steel pipe, fragments of a cardboard box, and duct tape. The items were booked into evidence.

17. On May 27, 2011, at about 1200 hours, I began conducting a post-blast investigation. I was assisted by ATF Special Agent Brian Parker, Yolo County Bomb Squad Officer Nick Concolino, and Fairfield Police Detective Darryl Webb. We removed the items of evidence from the Property/Evidence Division and examined the items. The evidence consisted of the remains of five blue metal cylinders, the remains of a galvanized steel pipe, a galvanized steel pipe end cap, numerous pieces of duct tape, and pieces of a torn apart/burned cardboard box. The pipe had burned and unburned remains of smokeless gunpowder, along with the heavy odor of smokeless gun powder on the interior wall of the pipe. One of the blue cylinders had a notable amount of unburned smokeless gun powder that I was able to pour out of the base stand of the cylinder. I was able to

"jigsaw" several pieces of the cardboard back together, finding that it appeared to be part of a box labeled as containing a "PWRINV300012W." There were also loose pieces of duct tape and duct tape on the exterior of the cylinders and pipe. The pipe was measured and found that it had originally been about 12" in length and it had a 2" diameter. The recovered pipe end cap was marked with an "M." All five of the blue cylinders, which appeared to be consistent with small propane cylinders, were ruptured.

18. I later conducted internet research into the box labeled PWRINV300012W. Based upon the model number, the box had contained an AIMS brand power inverter, which I found to be sold on multiple web sites.

19. Based upon the items discovered, it appeared that the device had been constructed of a 2"x12" galvanized steel pipe "nipple," filled with smokeless gunpowder, and fitted with two pipe end caps. The "pipe bomb" appeared to have been duct-taped into the center of the five propane cylinders and placed into the cardboard power inverter box. We were not able to determine the fusing/triggering mechanism of the device.

20. We went back out to the parking lot of 1427 Phoenix Drive and conducted a second scene investigation. During the scene investigation, we recovered a large amount of cardboard, several additional pieces of the steel pipe and pipe end cap, and pieces of duct tape. Additionally, we located several small pieces of label that were blue and silver in color and had some markings on them.

21. While doing evidence collection at the scene, we located two places on the wall near where the SUV had been parked. The places on the wall were impact marks where fragments from the device had punched into the stucco wall of the apartment building. S/A Parker was able to dig a piece of pipe fragment from one of the impact holes.

22. While at the scene, we noted that the SUV was still present. We looked under the vehicle and found that there was damage from the device to the underside of the vehicle. We had the vehicle towed to the secure parking lot of Fire Station #38 (1633 Union Ave) for later examination.

23. Also, I spoke to REED while conducting the secondary scene investigation. REED told me that she and her husband, CLARK, had been roommates of a DANIEL GARCIA at 1653 Quincey Lane in the City of Fairfield. She said that she and CLARK had lived there in the fall of 2010, moving out in December of 2010 when they became concerned over GARCIA's behavior. She indicated that GARCIA had been in custody at Solano County Jail for a period of time, so they moved while GARCIA was in custody to avoid conflict.

24. REED said that in December 2010, shortly after GARCIA's release from custody, she had returned to the address on Quincey Lane to pick-up her second vehicle, which had been non-operable at that time. She said that as she was trying to tow the vehicle from the driveway, GARCIA came out of the residence. She said that GARCIA threw garbage on her vehicle and threatened to "blow up your car." She said that he followed the threat to blow up with the car by saying, "You know I have the shit here or I can get it on the internet."

25. REED told me that at least three times after she moved out, GARCIA came to her residence and created a disturbance. These incidents occurred in December 2010 and January 2011. She said that she called the police on these occasions and indicated that GARCIA was arrested on at least one of these occasions. I later located an arrest of GARCIA at 1427 Phoenix Drive on December 29, 2010 for driving under the influence.

26. REED said that neither she nor CLARK have had any contact with GARCIA since that last incident in January 2011. REED said that GARCIA had items such as propane cylinders in his garage at the time that she had moved out. She believed that GARCIA was capable of making a pipe bomb. REED told me that she believed GARCIA had possibly moved out of the residence on Quincey Lane.

27. A criminal history check of GARCIA showed that in 1996, as a juvenile, he was cited for arson and the use of a destructive device.

28. On May 31, 2011, I examined the Chevy Tahoe in the vehicle maintenance facility at Fire Station #38. S/A Parker and Detective Webb assisted me. Upon placing the vehicle on a lift, we located multiple marks on the undercarriage consistent with the vehicle being struck with fragments from the IED. We located a large puncture mark to the muffler of the vehicle. Inside of the muffler, we located a fragment of the missing pipe end cap. The piece was identifiable as a piece of the end cap by the threading on the inside of the piece.

29. After examining and releasing REED's vehicle, S/A Parker and I went to the Fairfield Home Depot store. We readily located small propane tanks of the appropriate size/color of the cylinders used in the device. Home Depot carried a Worthington brand 14.1 ounce propane canister. The label on the canister matched the label fragments that I had collected from the scene. Additionally, Home Depot carried Mueller brand 2"x12" pipe nipples and matching end caps. The end caps were also stamped with the "M" like the intact end cap recovered initially by Officer Grimm.

30. S/A Parker and I then drove past GARCIA's residence of record, 1653 Quincey Lane. As we drove past the residence, I saw a Ford Tempo parked in the driveway with a California license plate number 5NYJ628. A check through dispatch advised that the vehicle was registered to a Paul Valdivia at 1653 Quincey Lane. Valdivia is known to the Fairfield Police Department and has a history of narcotics related offenses.

31. I conducted research into GARCIA based upon REED's statement that she thought GARCIA had moved from the Quincey Lane address. The majority of his local (FPD) contacts showed his residence as 1653 Quincey Lane. His CDL and Solano County Probation records also showed 1653 Quincey Lane as his address. Upon checking the water billing for the address, I learned that the water bill is under the name of Selene Savage. According to FPD records and Accurint LexisNexis, Savage is GARCIA's mother.

32. On June 12, 2011, Officer Poppe conducted a traffic stop of GARCIA on Springfield Court at Springfield Drive, only about 900 yards driving distance from the residence on Quincey Lane. GARCIA was stopped driving the Ford Tempo CA/5NYJ628 registered

to Valdivia at the Quincey Lane address. During the contact, GARCIA advised Officer Poppe that he still resided at the 1653 Quincey Lane address and that the car belonged to his "roommate."

33. Based upon the above information, I believed that GARCIA was involved in the use of the IED under REED's vehicle, a violation of 12303.3 PC, a felony. I believed that GARCIA would be in possession of items consistent with the construction of a destructive device, and/or indicia of the construction of the destructive device.

### June 16, 2011, Search

34. On June 14, 2011, the Honorable Judge Harry Kinnicutt, Superior Court Judge of Solano County signed a state search warrant authorizing the search of 1653 Quincey Lane, DANIEL GARCIA, and any vehicles associated with the residence and its occupants.

35. On June 16, 2011, I led the service of the search warrant at 1653 Quincey Lane in the City of Fairfield. The search was conducted by members of the Fairfield Police Department, ATF, FBI, and the Yolo County Bomb Squad. GARCIA was not present when the search warrant was served.

36. A subject by the name of JIMMY HICKS was contacted in the residence. He told me that he had only been living at the residence for five days. Based on interviews and other contacts I believe that other individuals also lived at the residence, including a roommate with a prior homicide conviction.

37. During a search of the residence, I located the AIMS Brand PWRINV300012V power inverter that matched the model number from the burned/shattered cardboard box at the original bombing scene. I also located a sales receipt showing that the inverter had been purchased under the name of DANIEL GARCIA.

38. On a shelf in the garage, a balled up bed sheet was found. Explosives Enforcement Officer (EEO) Bryant Hart of the ATF opened the sheet in the presence of Detective Darryl Webb and me. A live Improvised Explosive Device was inside the sheet.

39. EEO Hart and Sergeant Jason Winger (Yolo County Bomb Squad) removed the IED from the residence and eventually rendered the device safe. They determined that the device was a 1-1/2"x8" galvanized steel pipe with cast metal end caps. One of the end caps had a hole drilled in it with a fuse inserted into the whole. The inside of the device contained a substance that appeared to be gun powder, a sample of which burned in a manner consistent with smokeless gun powder. The device also contained a paper towel like material that was packed inside like wadding.

40. Based upon the above information, it is my belief that GARCIA is the subject who used the destructive device under REED's vehicle on May 27, 2011.

41. During the service of the search warrant at GARCIA's residence a purple thumb drive labeled "Rich Dad's Education" and a black Cannon SD card were located by Fairfield Police Department Detective Troy Oliver in GARCIA's bedroom. Those items were seized and are in the custody of the Bureau of Alcohol, Tobacco, Firearms and

Explosives in Sacramento, California held under ATF case number 786035-11-0055, item number 15.

### June 18, 2011, Arrest

42. On June 17, 2011, the Honorable Judge Harry Kinnicutt, Superior Court Judge of Solano County, issued a "Ramey" Arrest Warrant for GARCIA on the charge of 12303.3 PC – Use of a Destructive Device.

43. On June 18, 2011, at 1255 hours, a neighbor on Quincey Lane called Fairfield Police Dispatch. The caller advised that GARCIA was inside of the residence. The caller identified himself as "Mattie" and advised that he had observed GARCIA checking the mailbox before going back inside. Multiple Fairfield Police units responded to the area and established a perimeter of the residence. The first Patrol unit was on scene in about five minutes. Per "Mattie" and the perimeter units, GARCIA was not observed leaving the house between the time of call and the first unit establishing a perimeter.

44. Lieutenant Joe Allio informed me that the Patrol units had established the perimeter and made contact with two subjects, one subject was GARY ANDERSON, who was uncooperative with the Officers. He indicated that he did not know who all was in the residence. Other patrol officers made contact with a black male subject in the backyard, who then went back inside the residence. Based upon the description provided to me by Officer Andy Carter, the subject was of similar description to JIMMY HICKS.

45. I again authored a search warrant for the residence for the purposes of arresting GARCIA and searching for any additional IEDs, or related evidence, that he may have brought back to the residence when he returned. I submitted this search warrant to the Honorable E. Bradley Nelson, Superior Court Judge of Solano County, in electronic format after being sworn-in via telephone. Judge Nelson granted the search warrant.

46. At approximately 2025 hours, GARCIA exited the residence after the Fairfield Police SWAT Team introduced chemical agents (CS Tear Gar) into the residence. He was taken into custody without incident. GARCIA was searched by a SWAT Officer in my presence and his belongings provided to me. Among the belongings was the SUBJECT CELLPHONE.

47. Upon examining the SUBJECT CELLPHONE, I found it to be a NOKIA brand model 2720A-2B "flip" style cellular phone that was black in color. Upon examining the manufacturer's label for a serial number or mean serial number, I could not locate one. The most distinct feature of the phone was an IMEI number of 012046/00/065414/4. An IMEI number is a unique number that can be used to identify a specific phone. The phone was later booked into the Evidence/Property section at Fairfield Police Department under case number 11-05360, Item Bar Code number: 1167519.

48. The subsequent search of the residence, pursuant to the June 18, 2011, search warrant developed no further evidence.

///

### Additional Information Regarding the SUBJECT CELLPHONE

49. During the search of the residence on June 16, 2011, I located several business cards with GARCIA's name and the business name "Alternative Research Concepts. The business card listed a cell phone number of 415-312-6865. I checked the Solano County Probation Department's "CASE" system, which is an internet based system allowing local agencies to verify an individual's probation status, conditions of probation, and contact information. The Probation Department's CASE system also listed 415-312-6865 as GARCIA's cellular phone number. On the morning of June 18, 2011, I was contacted by Solano County Sheriff's Deputy Brooke Parker. He had been contacted by a citizen and provided with 415-312-6865 as GARCIA's current cell phone number by the citizen.

50. On June 20, 2011, I spoke on the phone to a person who identified herself as GARCIA's mother, SELENE SAVAGE. She confirmed that 415-312-6865 was her son, GARCIA's, current cell phone number. She informed me that during the afternoon of June 18, 2011, she had received a text message from her son telling her that he (GARCIA) loved her. She later determined, by watching the local news, that GARCIA had sent that message while the SWAT stand-off was occurring.

51. In addition to this search warrant request and others in this case, I am aware that the United States is seeking an order that would compel GARCIA's cellular provide to provide historical location and subscriber information regarding the cell phone associated with number 415-312-6865.

52. Based upon my training and experience, I know that individuals often employ the use of electronic devices, such as cellular phones, to communicate regarding the criminal act including its preparation and execution. I know that the cellular phones used by those individuals contain logs of phone calls and store within the electronic memory of the device records of those calls, text messages, text message content, digital photos, videos, and voice mails. In addition to recording criminal acts, this information can show GARCIA's dominion and control over the phone during the periods relevant to this investigation.

### Additional Investigation

53. On June 20, 2011, ATF Special Agent Jolene Blair caused a search to be made of the National Firearms Registration and Transfer record to determine if Daniel GARCIA had any record of possessing or manufacturing any destructive devices or automatic firearms as defined in Title 26, Chapter 53 of the U.S. Code. The search revealed GARCIA has no such devices or firearms registered to him or has ever had a license to manufacture such firearms.

54. On June 28, 2011, ATF Special Agent Jolene Blair caused a search to be made of the National Insurance Crime Bureau to determine where the Chevrolet Tahoe, California License Plate 4EYS274, vehicle identification number 1GNEK13R4TJ412461, had been manufactured. The vehicle was manufactured in Jacksonville, Wisconsin, therefore if the vehicle was received or possessed in the State of California it traveled or affected interstate commerce.

55. According to his criminal history information, GARCIA has the following prior California state court felony convictions: Possession of a Narcotic Controlled Substance in 2010, Possession of a Narcotic Controlled Substance in 2003, and Possession of a Controlled Substance for Sale in 2001.

### Additional Information Regarding the ELECTORNIC STORAGE MEDIA

56. In my training and experience, individuals who make IEDs generally have researched explosives, and related topics. Such research is commonly done using the internet. Therefore the ELECTONIC STORAGE MEDIA likely contain articles, research reports, or other documents regarding improvised explosive devices, explosive cases (current or historical), or victims and/or perpetrators of such crimes. In addition ELECTONIC STORAGE MEDIA can store photos, videos and files. Photos are used to memorialize IED's manufactured by individuals. The ELECTONIC STORAGE MEDIA may be instrumentalities, fruits, or evidence of a crime committed by GARCIA and/or secondly, the objects may have been used to collect, store, and/or transmit information about crimes.

57. I know based on my training and experience that thumb drives and SD cards can be used to store images and other information related to GARCIA's alleged offenses, such as photographs, videos, plans, diagrams, schematics, instructions, purchase records, and other data related to the manufacture, possession, and detonation of explosive devices. Photos are often used to memorialize IED's manufactured by individuals. I know that individuals involved with making IED's commonly use computers in order to research, order, and purchase parts on the internet. I am aware that the Internet can be used to learn about the manufacture of IED's. Thumb drives and SD cards are often used to store such information.

### CONCLUSION

58. For the foregoing reasons, I respectfully submit that there is probable cause to believe that the SUBJECT CELL PHONE, SD card and purple thumb drive presently contain and evidence of the offenses described in Paragraph 2, herein, and therefore I request a warrant to search the items described in Attachments A-1, A-2 and A-3 for the items as set forth in Attachment B hereto. In addition, I request that a complaint and arrest warrant be issued for Daniel Richard GARCIA.

### REQUEST FOR SEALING

59. The United States requests that the Court order this search warrant, search warrant affidavit, criminal complaint and arrest warrants be kept under seal until further order of the Court, with the exception that a copy of the search warrant will be left at the scene of the search. The

investigation in this case is ongoing and without such an order, individuals may conceal, damage, or destroy evidence.

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge, information, and belief.

*[signature]*
WILLIAM I. SHAFFER
Task Force Office
Bureau of Alcohol, Tobacco and Firearms


Subscribed and sworn to before me this 28th day of June, 2011.

*[signature]*
EDMUND F. BRENNAN
United States Magistrate Judge


Approved as to Form.

*[signature]*
Michael D. Anderson
Assistant United States Attorney

## ATTACHMENT A-1

**DESCRIPTION OF SUBJECT CELL PHONE:**

Black Colored Nokia model 2720A-2B cellular "flip" style phone with an IMEI number of 012046/00/065414/4. The Nokia cellular telephone is booked into evidence by the Fairfield Police Department, case number 11-05360, Item Bar Code number: 1167519, date June 18, 2011.

## ATTACHMENT A-2

**DESCRIPTION OF THUMB DRIVE:**

Purple thumb drive labeled "Rich Dad's Education" seized and booked into evidence by the Fairfield Police Department on June 16, 2011, currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives in Sacramento, California, ATF case number 786035-11-0055, item number 15.

## ATTACHMENT A-3

**DESCRIPTION OF SD CARD:**

Black Cannon SD card seized and booked into evidence by the Fairfield Police Department on June 16, 2011, currently in the custody of the Bureau of Alcohol, Tobacco, Firearms and Explosives in Sacramento, California, ATF case number 786035-11-0055, item number 15.

## ATTACHMENT B-1

**ITEMS TO BE SEARCHED AND SEIZED:**

1.  The following items, images, documents, communications, records, materials, and information are to be seized wherever they may be stored or found at the location to be searched and in any form that they may be stored or found:

    a.  Any records of incoming or outgoing calls, which would include the number associated with the phone, last numbers dialed, last calls received, time of calls and duration of calls, both to and from associates of GARCIA.

    b.  Any records of incoming and outgoing voicemail messages both to and from associates of GARCIA.

    c.  Any records of text or voicemail messages both to and from associates of GARCIA that are related to the manufacture or possession of destructive devices, including, but not limited to, messages related to GARCIA's relationship with the victims of the detonation of the destructive device, GARCIA's whereabouts at the time the destructive devices where found or possessed, GARCIA and other's ownership, control, manufacture, and use of destructive devices.

    d.  Any records of photographic images stored on the SUBJECT CELLPHONE related to the manufacture, possession or use of an explosive device, including, but not limited to, photographs of tools, equipment, destructive devices, parts that have or can be used in the manufacture of destructive devices, locations where destructive devices have been found.

2.  Any of the items described in subparagraphs (a) through (d) above which are stored in the form of magnetic or electronic coding on digital media or on media capable of being read by a computer with the aid of computer related equipment, including cell phones or memory in any form. The search procedure of the electronic data contained in computer operating software or memory devices may include the following techniques:

    a.  surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

    b.  "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

    c.  "scanning" storage areas to discover and possibly recover recently deleted files;

    d.  "scanning" storage areas for deliberately hidden files; or

    e.  performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

  f.  in the case of voicemail messages, such messages may be retrieved by engaging the voicemail function of the SUBJECT CELLPHONE either through a prompt on the phone or a dedicated button.

3. Contextual Information regarding ownership and control over the SUBJECT CELLPHONE:

  a.  Evidence of who used, owned, or controlled the SUBJECT CELLPHONE at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, photographs, and correspondence;

  b.  Evidence of the attachment to the SUBJECT CELLPHONE of other storage devices or similar containers for electronic evidence;

  c.  Evidence of the times the SUBJECT CELLPHONE was used;

  d.  Passwords, encryption keys, and other access devices that may be necessary to access the SUBJECT CELLPHONE; and

  e.  Contextual information necessary to understand the evidence described in this attachment.

## ATTACHMENT B-2 and B-3

**ITEMS TO BE SEARCHED AND SEIZED:**

1. The following items, images, documents, communications, records, materials, and information are to be seized wherever they may be stored or found at the location to be searched and in any form that they may be stored or found:

   a. Any and all files related to the manufacture or possession of destructive devices.

   b. Any and all files related to GARCIA's relationship with the victims of the detonation of the destructive device, GARCIA's whereabouts before/after and at the time the destructive devices where found or possessed, GARCIA and other's ownership, control, manufacture, and use of destructive devices.

   c. Any files of photographic images stored on the ELECTRONIC STORAGE MEDIA related to the manufacture, possession or use of an explosive device, including, but not limited to, photographs of tools, equipment, destructive devices, parts that have or can be used in the manufacture of destructive devices, locations where destructive devices have been found.

2. Any of the items described in subparagraphs (a) through (d) above which are stored in the form of magnetic or electronic coding on digital media or on media capable of being read by a computer with the aid of computer related equipment. The search procedure of the electronic data contained in computer operating software or memory devices may include the following techniques:

   a. surveying various file "directories" and the individual files they contain (analogous to looking at the outside of a file cabinet for the markings it contains and opening a drawer believed to contain pertinent files);

   b. "opening" or cursorily reading the first few "pages" of such files in order to determine their precise contents;

   c. "scanning" storage areas to discover and possibly recover recently deleted files;

   d. "scanning" storage areas for deliberately hidden files; or

   e. performing key word searches through all electronic storage areas to determine whether occurrences of language contained in such storage areas exist that are intimately related to the subject matter of the investigation.

3. Contextual Information regarding ownership and control over the ELECTRONIC STORAGE MEDIA:

   a. Evidence of who used, owned, or controlled the ELECTRONIC STORAGE MEDIA at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, photographs, and correspondence;

 c. Evidence of the times the ELECTRONIC STORAGE MEDIA was used;

 d. Passwords, encryption keys, and other access devices that may be necessary to access the ELECTRONIC STORAGE MEDIA; and

 e. Contextual information necessary to understand the evidence described in this attachment.